No. 19-1044

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT


*In Re* PUBLIC EMPLOYEES FOR ENVIRONMENTAL
RESPONSIBILITY and HAWAII COALITION MALAMA PONO,

PETITIONERS


**PETITION FOR WRIT OF MANDAMUS
(AGENCY ACTION UNREASONABLY DELAYED)**

Paula Dinerstein, DC Bar # 333971
Public Employees for Environmental Responsibility
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
(202) 265-7337 (tel)
(202) 265-4192 (fax)
pdinerstein@peer.org

*Attorneys for Petitioners Public Employees for Environmental Responsibility
and Hawaii Coalition Malama Pono*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ....................................................... iii

Glossary ..................................................................................... v

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION ............................................. 3

RELIEF SOUGHT ....................................................................... 4

ISSUE PRESENTED .................................................................... 5

STATEMENT OF FACTS ............................................................ 5

REASONS WHY THE WRIT SHOULD ISSUE ........................ 13

Respondents Have Unreasonably Delayed Performing their Mandatory

Duty to Prepare Air Tour Management Plans or Voluntary Agreements with

Commercial Air Tour Operators over the Covered Parks .................... 13

STANDING ............................................................................... 19

A.   HICoP .......................................................................... 21

B. PEER .............................................................................. 22

CONCLUSION .......................................................................... 24

ADDENDUM ...................................................................................... 1

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ... i

   A.   Parties and Amici ................................................................... i

   B.   Rulings Under Review ............................................................ i

   C.   Related Cases ....................................................................... i

DISCLOSURE STATEMENT (PEER) ....................................................... iii

DISCLOSURE STATEMENT (HICoP) ..................................................... iv

CERTIFICATE OF COMPLIANCE ........................................................... v

CERTIFICATE OF SERVICE .................................................................. vi

# TABLE OF AUTHORITIES

### Cases

*George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1421(11th Cir. 1993)....................4

*Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333 (1977) ................. 20, 21

*In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004)15, 16, 17

*In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D. C. Cir. 1991) ..........................18

*In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) ..........................17

*In re Core Commc'ns*, 531 F.3d 849, 855 (D.C. Cir. 2008) ...................................16

In re People's Mojahedin Org. of Iran, 680 F.3d 832, 837-38 (D.C. Cir. 2012). ....17

*In re Public Employees for Environmental Responsibility and Hawaii Coalition Malama Pono*, No. 18-1044 ..............................................................................2, 4

*MCI Telecommunications Corp. v. Federal Communications Com.,* 627 F.2d 322, 340 (D.C. Cir. 1980) ............................................................................16

*Midwest Gas Users Assoc. v. Federal Energy Regulatory Com.*, 833 F.2d 341, 359 (D.C. Cir. 1987) ..................................................................................16

*Nader v. F.C.C.*, 520 F.2d 182, 206 (D.C. Cir. 1975) ...........................................17

*Pub. Citizen Health Research Grp. v. Auchter*, 702 F.2d 1150, 1157 (D.C. Cir. 1983) ...............................................................................................17

*Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir.

  1984) .........................................................................................................4, 16

### Statutes

28 U.S.C. § 1651 .......................................................................................4

49 U.S.C. § 40128 ............................................................................. passim

49 U.S.C. § 46110 .....................................................................................3

5 U.S.C. § 706 ...........................................................................................4

### Other Authorities

71 Fed. Reg. 36874, 36875 (June 28, 2006) ...........................................6

72 Fed. Reg. 6802, 6803 (Feb. 13, 2007) .............................................10

82 Fed. Reg. 30938 ................................................................................10

Advisory Circular, U.S. Dept. of Transportation, Federal Aviation Administration,

  "COMMERCIAL AIR TOUR OPERATIONS CONDUCTED OVER

  NATIONAL PARKS AND TRIBAL LANDS," October 25, 2002, AC No. 136-1

  ...........................................................................................................6, 9

### Regulations

14 C.F.R. §  136.36 ...................................................................................5

14 C.F.R. § 136.37 ...................................................................................5

14 C.F.R. § 136.41 ...................................................................................9

# Glossary

Air Tour Management Plan                                    ATMP

Federal Aviation Administration                             FAA

Hawaii Island Coalition Malama Pono                        HICoP

Hawaii Volcanoes National Park, Haleakalā National
Park, Lake Mead National Recreation Area,
Muir Woods National Monument, Glacier National Park,
Great Smoky Mountains National Park, and
Bryce Canyon National Park                       Covered Parks

Interim Operating Authority                                 IOA

National Parks Air Tour Management Act of 2000            NPATMA

National Park Service                                      NPS

Public Employees for Environmental Responsibility          PEER

## INTRODUCTION

Petitioners, Public Employees for Environmental Responsibility (PEER) and Hawaii Island Coalition Malama Pono (HICoP), seek a writ of mandamus to Respondents Federal Aviation Administration (FAA) and its Acting Administrator Dan Elwell, and the National Park Service (NPS) and its Deputy Director, P. Daniel Smith (exercising the authority of the Director), to meet their mandatory statutory obligation to develop Air Tour Management Plans (ATMPs) or voluntary agreements for Hawaii Volcanoes National Park, Haleakalā National Park, Lake Mead National Recreation Area, Muir Woods National Monument, Glacier National Park, Great Smoky Mountains National Park, and Bryce Canyon National Park (hereinafter "covered parks"). Respondents have unreasonably delayed developing these plans for 17 years beyond the time directed in the National Parks Air Tour Management Act of 2000, as amended (NPATMA), 49 U.S.C. § 40128.

Over the last 19 years since the passage of the NPATMA, Respondents have failed to develop the ATMPs that would ensure environmental review, public participation, and mitigation or prevention of impacts on the natural and cultural resources and visitor experience in the covered parks, or to enter voluntary agreements that would afford similar protections. Instead, Respondents have allowed tens of thousands of annual flights over the covered parks to continue

under Interim Operating Authority (IOA).  IOA does not provide the protections of

ATMPs or voluntary agreements and was intended by Congress to be a temporary

measure to avoid air tour operators having to go out of business while ATMPs

were prepared over a two-year period.

Petitioner PEER is a public interest organization whose mission is to

advocate for public employees, including those who are employed at covered

parks, and whose members regularly use covered parks but find that the overflights

disrupt their enjoyment of the parks.  Petitioner HICoP is a public interest

organization dedicated to reducing the impact of noise from helicopters on the

State of Hawaii.  HICoP members are impacted by overflights over Hawaii

Volcanoes National Park both in their homes and when they recreate in the park.

This matter was previously before this court as *In re Public Employees for

Environmental Responsibility and Hawaii Coalition Malama Pono*, No. 18-1044,

with only the FAA as a respondent.  That petition for mandamus was dismissed in

a *per curiam* decision on the basis that petitioners lacked standing.  Doc. 1759626

(Nov. 13, 2018).  Specifically, the court found that the relief the petitioners sought

against the FAA would not redress their injuries because NPS approval is required

for the issuance of ATMPs and voluntary agreements, and the NPS was not then

before the court.  The court did not rule on any other issues in the case.  This

petition cures the deficiency that occasioned the dismissal of the previous petition by including the NPS and its acting Director as respondents.

## STATEMENT OF JURISDICTION

In accordance with 49 U.S.C. § 46110(a) and (c), appeals of orders of the Administrator of the FAA under *inter alia*, NPATMA, 49 U.S.C. § 40128, are subject to the exclusive jurisdiction of the United States Court of Appeals for the District of Columbia Circuit or the court of appeals for the circuit in which the appellant resides or has its principal place of business. ATMPs and voluntary agreements are orders of the Administrator of the FAA subject to 49 U.S.C. § 46110. The NPS is also subject to § 40128, which assigns it duties with regard to ATMPs and voluntary agreements. NPATMA requires FAA to develop ATMPs in cooperation with NPS, 49 U.S.C. § 40128(a)(2)(D); § 40128(b)(1)(A); requires environmental determinations for ATMPs to be signed by both the FAA Administrator and the NPS Director, § 401218(b)(2); directs procedures for establishing ATMPS to be conducted by the FAA Administrator and the NPS Director, § 40128(b)(4); requires voluntary agreements to be entered by both the FAA Administrator and the NPS Director, § 40128(b)(7)(A); and gives the NPS Director authority to terminate a voluntary agreement. § 40128(b)(7)(D)(i)(I). Therefore, this Court also has jurisdiction of the claim against NPS under 49 U.S.C. § 46110. In fact, this court ruled that the NPS is a necessary party to this

3

case. *In re Public Employees for Environmental Responsibility and Hawaii Coalition Malama Pono,* Case No. 18-1044, Doc. 1759626.

Because this court would have jurisdiction over any challenges to ATMPs or voluntary agreements, it also has jurisdiction to issue a writ of mandamus ordering Respondents, the FAA Administrator and the NPS Director, to issue ATMPs or voluntary agreements required by statute that have been unreasonably delayed. *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984)("*TRAC*")("Because the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction"); *George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1421(11th Cir. 1993)(review of FAA failure to act lies in the court of appeals); *see also* 28 U.S.C. § 1651(a) (All Writs Act); and 5 U.S.C. § 706 (1) ("The reviewing court shall compel agency action unlawfully withheld or unreasonably delayed").

## RELIEF SOUGHT

Petitioners seek a writ of mandamus to the FAA and its Administrator and the NPS and its Director to complete ATMPs for all of the covered parks in accordance with all statutory and regulatory requirements, within 24 months of the date of the issuance of the writ, unless by that time voluntary agreements,

compliant with all statutory and regulatory requirements, have been entered with all commercial air operators over those parks.

## ISSUE PRESENTED

Whether the 17-year delay beyond the statutory directive in the NPATMA to complete ATMPs or voluntary agreements for the covered parks in 24 months constitutes unreasonable delay justifying mandamus relief ordering completion of these plans or agreements within 24 months, the time originally set by statute in 2000.

## STATEMENT OF FACTS

NPATMA provides that commercial air tour operators may not conduct air tours over units of the national park system without applying to the FAA for operating authority. 49 U.S.C. § 40128(a)(2)(A). Receipt of such an application triggers the duty of the Administrator of the FAA, in cooperation with the Director of the NPS, to establish an ATMP for that park. 49 U.S.C. § 40128(b)(1)(A). The FAA may not grant operating authority to any applicant before completion and implementation of an ATMP. 49 U.S.C. § 40128(a)(2)(D); 14 C.F.R. § 136.37(d). The FAA is to "make every effort" to act on applications for operating authority and issue a decision not later than 24 months after the application is received. 49 U.S.C. § 40128(a)(2)(E) ("Time limit on response to ATMP applications"); 14 C.F.R. § 136.37(e). Thus, because the FAA is to act on applications for operating

authority within 24 months, and completing and implementing an ATMP is a prerequisite to the grant of operating authority, ATMPs must be developed and implemented *before* 24 months from the receipt of any application for operating authority.

As the FAA has acknowledged, "Once an application is filed, the FAA, in cooperation with Director of the National Park Service, *must* develop and implement an ATMP for the park or abutting tribal land." "Proposed Opinion on the Transferability of Interim Operating Authority Under the National Parks Air Tour Management Act," 71 Fed. Reg. 36874 (June 28, 2006)(emphasis added). *See also* Advisory Circular, U.S. Dept. of Transportation, Federal Aviation Administration, "COMMERCIAL AIR TOUR OPERATIONS CONDUCTED OVER NATIONAL PARKS AND TRIBAL LANDS," October 25, 2002, AC No. 136-1, p 3. § 5.b ("The Act requires all persons operating or intending to operate a commercial air tour operation to apply to the FAA for authority to conduct such activity. The Act further requires the FAA and NPS to develop an Air Tour Management Plan (ATMP) for each unit of the National Park system or tribal land that does not have a plan in effect at the time a person applies for authority to conduct such an operation").[1]

---

[1] Available at
https://www.faa.gov/about/office_org/headquarters_offices/arc/programs/air_tour_management_plan/documents/advisory_circular.pdf

ATMPs are intended to mitigate or prevent any significant adverse impacts of commercial air tours on the natural and cultural resources and visitor experience at parks and adjacent tribal lands.  49 U.S.C. § 40128(b)(1)(B).  To achieve this goal, ATMPs may prohibit commercial air tours over a national park in whole or in part; establish routes, allowed altitudes, time of day restrictions, restrictions for particular events, and maximum number of flights per unit of time; and provide for mitigation of noise, visual and other impacts.  ATMPs are also required to include incentives for the use of quiet aircraft technology. 49 U.S.C. § 40128(b)(3). Preparation of an ATMP requires review under the National Environmental Policy Act, § 40128(b)(2), and is subject to public participation requirements including public meetings, notice and comment, and participation by affected Indian tribes. § 40128(b)(4). ATMPs are explicitly made subject to judicial review. § 40128(b)(5).

All of the covered parks had existing air tour operators at the time NPATMA was enacted in 2000.  Those operators were then required by NPATMA to apply for operating authority, thus triggering the requirement for an ATMP within 24 months so that the operator applications could be acted upon. However, no ATMPs have ever been established in those parks or any others.

The only exceptions to NPATMA's requirement for ATMPs are if voluntary agreements are entered with all air tour operators over the park (any outstanding

applications for operating authority for operators without a voluntary agreement would still trigger the need for an ATMP), 49 U.S.C. § 40128(b)(7), or if the park has fewer than 50 overflights per year.  § 40128(a)(5)(A).  None of the covered parks has a voluntary agreement with any air tour operator or has fewer than 50 overflights per year.

Voluntary agreements with air tour operators as an alternative to ATMPs must address the management issues necessary to protect the resources and visitor use of the park, and may include provisions similar to those in ATMPs, except that they may not entirely prohibit air tour operations over a park. 49 U.S.C. § 40128(b)(7)(B).  Proposed voluntary agreements are subject to public review and consultation with affected Indian tribes, and may not be implemented prior to such review and consultation. § 40128(b)(7)(C).

NPATMA also provides for the grant of interim operating authority (IOA) by the FAA Administrator to operators pending development of an ATMP and terminating 180 days after the establishment of an ATMP.  49 U.S.C. § 40128(c). All of the air tour operators over the covered parks operate based on IOA.

The FAA has outlined the process as it should work in an Advisory Circular. It states that no operator may conduct operations over national parks without applying for operating authority, and that the submission of such applications

triggers the FAA and NPS to initiate development of the ATMP.[2]  The submission

of an application for operating authority also leads the FAA to grant IOA to

existing operators in the park, in order to allow them to continue operations while

the ATMP is developed.  *Id.*[3]  The FAA issues operating authority only after both

the completion of the ATMP process and the implementation of the rules

developed in the ATMP, which govern matters such as flight procedures, weather,

altitudes, training, entry and exit locations, routes and sightseeing locations.  *Id.*, p.

4-5, § 6.e.

The FAA has described Congress's creation of IOA for existing tour

operators over national parks as intended solely to bridge the gap while ATMPs are

being developed.

> Congress set up the IOA process as a way of ensuring that those
> commercial air tour operators conducting commercial air tours over
> national parks at the time of Act's enactment would not be put out of
> business while the FAA, in cooperation with NPS, analyzed the
> environmental impact of the air tours on the national park unit and
> developed an ATMP. The IOA then ends 180 days after the ATMP is
> adopted.
> ….
> IOA was designed as a temporary solution to allow operators already
> conducting air tours at the time of the enactment of the Act to continue
> to operate pending completion of the ATMP, or new entrants to begin
> operation to ensure competition.

[2] Advisory Circular, *supra* n. 1, p. 4, § 6.

[3] The statute and the regulations provide for IOA to be granted upon application for operating authority by existing operators over a national park.  49 U.S.C. § 40128 (c)(1); 14 C.F.R. § 136.41 (a).  IOA is to be terminated 180 days after establishment of an ATMP.  49 U.S.C. § 40128(c)(2)(E); 14 C.F.R. § 136.41(b)(5).

"Notice of Final Opinion on the Transferability of Interim Operating Authority under the National Parks Air Tour Management Act," 72 Fed. Reg. 6802, 6803 (Feb. 13, 2007).

Nonetheless, FAA and NPS have permitted this "temporary solution" to last for nearly two decades, without ever establishing the ATMPs that would provide the full environmental review and protection required by statute.  Nor have the FAA and NPS entered into voluntary agreements, with the protections that they provide, with any of the tour operators over the covered parks.[4]  Moreover, nothing in any public notice or planning document indicates any current ongoing effort to develop any ATMPs or voluntary agreements for the covered parks, indicating a complete abdication of Respondents' statutory duties.[5]

---

[4] In fact, the FAA has entered into voluntary agreements with all operators at only two parks in the entire country, Big Cypress National Preserve in December 2015, 82 Fed. Reg. 30938, 30939 (July 3, 2017), and Biscayne National Park in 2016. *See* https://www.nps.gov/bisc/learn/news/air-tour-operators-biscayne-national-park.htm.  A draft voluntary agreement for both Glen Canyon National Recreation Area and Rainbow Bridge National Monument was made available for public review in December 2017, *see* https://www.nps.gov/glca/learn/news/air-tour-management-agreement-now-available-for-public-review.htm.  Some but not all of the air tour operators over those parks have entered final voluntary agreements. No other voluntary agreements have been entered in any parks.

[5] *See* https://www.faa.gov/about/office_org/headquarters_offices/arc/programs/air_tour_management_plan/  This is an FAA webpage concerning ATMPs that updates their status as of September 5, 2018.  It is the most recent update available.  It notes a draft voluntary agreement for Glen Canyon National Recreation Area and Rainbow

Yet, despite the lack of activity on ATMPs or voluntary agreements, a massive number of overflights has been allowed to continue in the covered parks for the last 19 years since the passage of the NPATMA. The most recent figures for flights authorized by IOA are for 2017, and show 16,520 annual overflights at Hawai'i Volcanoes National Park, 4,839 at Haleakala National Park, 8,735 at Lake Mead National Recreation Area, 1,173 at Muir Woods National Monument, 838 at Great Smoky Mountain National Park, 109 at Glacier National Park (with at least one quarterly report missing), and 480 at Bryce Canyon National Park. National Park Service, Update No. 1 to Natural Resource Report, *Reporting Information for*

-----

Bridge National Monument, but does not indicate that it was finalized. It does not reference any ATMPs, either completed or in process.

NPS's "Planning, Environment and Public Comment" site has links to all current planning and environmental review processes for each national park. *See* https://parkplanning.nps.gov/parks.cfm. None of the covered parks lists any project concerning air tour management, with the exception of Hawaii Volcanoes. In that case, the ATMP process was begun in 2004, *see* https://parkplanning.nps.gov/projectHome.cfm?projectID=36002, and never proceeded past development of preliminary alternatives for the ATMP. *See* "Newsletter for HAVO Air Tour Mgmnt. Plan April 2011," available at https://parkplanning.nps.gov/document.cfm?parkID=307&projectID=36002&documentID=40060. The most recent activity in this process was in April 2011, when the FAA and NPS asked for public comments on the preliminary alternatives, and then received comments and held three public meetings between April and June 2011. *See* https://parkplanning.nps.gov/document.cfm?parkID=307&projectID=36002&documentID=46821 Nothing has happened since then, indicating that after seven years since its commencement, the project was simply dropped.

*Commercial Air Tour Operations Over Units of the National Park System: 2017 Annual Report* (September 27, 2018), p. 6.[6]  The total number of overflights for all national parks in 2017 was 58,692.  *Id.*, p. 9.

Petitioners' members suffer from noise and visual impacts of park overflights during their various activities in the covered parks.  If there were fewer aircraft and less noise, the hikers, birdwatchers, ground tour operators, soundscape recorders, environmental educators, and nearby residents who belong to PEER would be able to enjoy the parks and their properties more.  Moreover, the Hawaiian homeowners in HICoP would have less disruption to the quiet enjoyment of their properties and their recreational activities in Hawaii Volcanoes National Park.  If the FAA and NPS were to develop an ATMP for each covered park, or voluntary agreements with all of the operators, Respondents NPS and FAA would have to consider and mitigate the impacts on Petitioners.  Changes to altitudes, routes, number of flights per hour, time-of-day restrictions and other mitigation measures could significantly mitigate the harm to Petitioners from the status quo.

---

[6] Available at https://home.nps.gov/subjects/sound/upload/2017_Report_Update_No_1_20180927_508COMP.pdf.

12

## REASONS WHY THE WRIT SHOULD ISSUE

**Respondents Have Unreasonably Delayed Performing their Mandatory Duty to Prepare Air Tour Management Plans or Voluntary Agreements with Commercial Air Tour Operators over the Covered Parks**

The FAA and NPS have a statutory duty under NPATMA to prepare ATMPs or voluntary agreements with commercial air tour operators that fly over the covered parks.  Nineteen years have passed since Congress directed the FAA and NPS to develop ATMPs within a 24-month time period.  The FAA and NPS have failed to act within a reasonable time and the court should issue a writ of mandamus to the FAA and its Administrator and the NPS and its Director, directing that they complete ATMPs or voluntary agreements with all of the operators for all of the covered parks within 24 months.

As the preceding description of the statutory scheme demonstrates, there can be no doubt but that Respondents have a mandatory duty to produce ATMPs for every national park unit with more than 50 commercial air tour overflights per year, or voluntary agreements with all commercial air tour operators over each such park.  49 U.S.C. § 40128(b)(1); § 40128(b)(7). The statutory scheme and the FAA's own implementing materials indicate that once any air tour operator seeks operating authority over a park, the duty of the FAA and NPS to prepare an ATMP is triggered. Operating

authority cannot be granted until the ATMP is completed <u>and</u> implemented. The statute indicates that the applications for operating authority should be acted upon in no more than 24 months, and a prerequisite to doing so is completion of the ATMP, or alternatively, voluntary agreements.

All of the covered parks had existing air tour operators at the time of the enactment of the NPATMA in 2000, and those operators were required by law to apply for operating authority, thus triggering Respondents' duty to prepare ATMPs within two years. Even assuming that the statutory language "make every effort" is not a hard deadline, it certainly indicates congressional intent that ATMPs be completed in that time-period. By no stretch of the imagination can 19 years be considered a reasonable time.

Moreover, Respondents' failure to produce ATMPs and allowance of large-scale operations under IOA has also resulted in there being very few of the voluntary agreements that the statute provides as an alternative to ATMPs. Air tour operators have little or no incentive to enter the more burdensome and restrictive voluntary agreements if they can simply continue to operate under IOA. As noted above, only two parks in the entire country have completed voluntary agreements with all operators. Only one additional voluntary agreement for two parks has been completed, but it has not been entered by all operators over those parks. There are none at the covered parks. Thus, the natural and cultural

14

resources of the parks and the experience of park visitors do not benefit from the

public participation, environmental review, and restrictions to protect natural

resources and visitor experience that NPATMA is intended to provide.

Respondents have in effect transformed IOA, which was intended as a temporary

stopgap while ATMPs were developed, into a permanent substitute for the ATMPs

and voluntary agreements required by statute.

Mandamus is the appropriate remedy to correct the failure of agencies to act

within a reasonable time.

> Mandamus is an extraordinary remedy reserved for extraordinary circumstances. … An administrative agency's unreasonable delay presents such a circumstance because it signals the breakdown of regulatory processes. . . . Accordingly, we will interfere with the normal progression of agency proceedings to correct transparent violations of a clear duty to act . . . because it is obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action.

*In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004)

(internal quotation marks and citations omitted). That is exactly the situation here.

In making the determination of unreasonable delay, this court has articulated

six factors to consider:

> (1) the time agencies take to make decisions must be governed by a "rule of reason" . . .
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason . . .

15

(3) delays that might be reasonable in the sphere of economic
regulation are less tolerable when human health and welfare are at
stake . . .
(4) the court should consider the effect of expediting delayed action
on agency activities of a higher or competing priority . . .
(5) the court should also take into account the nature and extent of the
interests prejudiced by delay . . . and
(6) the court need not "find any impropriety lurking behind agency
lassitude in order to hold that agency action is "unreasonably
delayed."

*TRAC*, 750 F.2d at 80 (citations omitted).

The first and most important *TRAC* factor is the "rule of reason." *In re Core Commc'ns*, 531 F.3d 849, 855 (D.C. Cir. 2008). While "[t]here is no *per se* rule as to how long is too long to wait for agency action . . . a reasonable time for agency action is typically counted in weeks or months, not years." *Am. Rivers*, 372 F.3d at 419 (internal quotation marks and citations omitted); s*ee also Midwest Gas Users Assoc. v. Federal Energy Regulatory Com.*, 833 F.2d 341, 359 (D.C. Cir. 1987) ("[T]his court has stated generally that a reasonable time for an agency decision could encompass 'months, occasionally a year or two, but not several years or a decade.'" (*quoting MCI Telecommunications Corp. v. Federal Communications Com.,* 627 F.2d 322, 340 (D.C. Cir. 1980)).

This court's decisions have been consistent with this statement, generally finding delays of several years to be unreasonable. In the *American Rivers* case, this court found that a delay of six years in responding to a rulemaking petition concerning endangered species consultations was unreasonable, and ordered the

16

agency to respond within 45 days.  372 F3d. at 414.  This court found a nine year delay in promulgating regulations mandated by statute unreasonable in *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000); *see also Nader v. F.C.C.*, 520 F.2d 182, 206 (D.C. Cir. 1975) ("nine years should be enough time for any agency to decide almost any issue").

Where Congress has directed a specific timetable for a decision, even much shorter delays have been found unreasonable.  This court held in *In re People's Mojahedin Org. of Iran*, that in the face of a 180 day statutory deadline, 20 months without a decision constituted unreasonable delay.  680 F.3d 832, 837-38 (D.C. Cir. 2012). The court noted, as the second *TRAC* factor directs, that a congressional timetable "may supply content for the rule of reason."  *Id.* at 836 (quoting *TRAC*, 750 F.2d at 80).  Here, there is a significantly greater disparity between the 24-month congressional direction in the NPATMA and the 19 years that have elapsed.

The third *TRAC* factor directs that where human health and welfare are at stake, shorter delays than those for economic regulation are tolerated.  *E.g., Pub. Citizen Health Research Grp. v. Auchter*, 702 F.2d 1150, 1157 (D.C. Cir. 1983) (holding three years from announced intent to regulate a toxic chemical to final rule is unreasonable delay).  Here, human health and welfare are at stake, since the noise and disruption of overflights harms not only the enjoyment of visitors to our national parks, but the health and well-being of nearby residents such as the HICoP

17

members.  However, in any case, because there has been a 17-year delay here, the stricter standard for harm to human health and welfare need not be employed to find the delay unreasonable.

Competing priorities, the fourth *TRAC* factor, is difficult to address without a response from the FAA and NPS that may or may not assert any competing priorities.  However, none are evident, and it is difficult to imagine competing priorities that could have occasioned a 17-year delay.  This also is not a case like *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D. C. Cir. 1991), where Petitioners' request to be put at the "head of a queue [would] simply move[] all others back one space and produce[] no net gain."  Here, unfortunately, as far as can be ascertained from publicly available information, there is no queue, as there is no current effort to prepare *any* ATMPs for any national park units, and only one voluntary agreement for two parks is in process nationwide.  The FAA's web page for Air Tour Management Plans as of September 5, 2018 announces the availability of a draft voluntary agreement for Glen Canyon National Recreation Area and Rainbow Bridge National Monument.  The comment period on this agreement ended on January 26, 2018, but no action on them is noted. There are not any pending ATMPs noted.[7]

---

[7]https://www.faa.gov/about/office_org/headquarters_offices/arc/programs/air_tour_management _plan/  The draft voluntary agreement for Glen Canyon and Rainbow Bridge, dated December

As to the fifth *TRAC* factor, the nature and extent of the interests prejudiced by delay, the interests prejudiced here, the natural and cultural resources of national parks and the experience of national park visitors and nearby residents, are the very interests that were intended to be benefitted by the NPATMA.  The Act directs that ATMPs and voluntary agreements are intended to mitigate or prevent significant adverse impacts on the natural and cultural resources and visitor experiences in national parks and tribal lands.  49 U.S.C. § 40128(b)(1)(B); § 40128(b)(7)(B). The 17-year unreasonable delay in developing these plans and agreements, in effect a total abdication of the statutory obligation to do so, frustrates the very purpose of the Act.

Thus, all of the *TRAC* factors favor a finding of unreasonable delay, and the most important factor, the rule of reason for time to complete agency mandates, is clearly violated by the delay of 17 years past the time directed by Congress.

## STANDING

While it is not required to address standing in an initial petition for mandamus, *see* FRAP 21 and Circuit Rule 21, the FAA challenged standing in the prior proceeding and Petitioners responded with arguments and standing

---

13, 2017, is available at GLCA-RABR_AirTourAgrmnt_PublicRev_508COMP_20171213 (1).pdf

declarations.  These are also submitted here.  The court dismissed on standing grounds, but only with regard to redressability because of the absence of the NPS from the case.  It did not address any of the other requirements for standing for the petitioner organizations.

PEER and HICoP both have associational standing.  The requirements are: "(a) [an organization's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977).

PEER is a national non-profit alliance of government environmental professionals, as well as citizens who support PEER's mission of upholding environmental laws and values. Here, PEER seeks to do so by enforcing FAA's statutory duty to prepare plans and agreements to protect the natural values and visitor experience in national parks with overflights. Thus, the suit is germane to PEER's purpose. HICoP is a public interest organization dedicated to reducing the impact of noise from helicopters on the State of Hawaii. In this suit, HICoP is seeking to enforce a law (NPATMA) meant to protect its interests in less frequent and less noisy overflights over national parks in Hawaii.

Neither the claim asserted (the failure to produce ATMPs or voluntary

agreements) nor the relief requested (production of ATMPs or voluntary agreements) requires the participation of individual members of PEER or HICoP.

The claim here is not specific to the individual members, and the relief sought would address the members' injuries without the necessity of any individualized relief. *See Hunt*, 432 U.S. at 343 ("If ... the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured") (internal citation omitted).

Regarding the members' standing to sue in their own right, the attached Declarations – Exs. A -N -- demonstrate that both organizations have members who meet the requirements of individual standing with respect to all of the covered parks.

### A. HICoP

Four members of HICoP have submitted declarations evidencing injury related to Hawai'i Volcanoes National Park that would be redressed by a favorable decision here. Bonnie Miller has been driven away from her previous activities of hiking and camping in the Park by overflights, which have disturbed the natural soundscape, solitude and quiet. Miller Decl., Ex. A hereto, ¶¶ 3, 5. She would return to those activities if air tours were well-regulated. *Id.,* ¶ 4. The air tours over the Park pass over her property five to fifteen times a day, disrupting her quiet

21

enjoyment, disturbing her sleep, and likely reducing the value of her home. *Id.,* ¶¶ 6, 7, 8 and 9.

Daryl Soares lives within five miles of the Park and suffers on average 40 flights daily over his property, severely disrupting his quiet enjoyment and likely diminishing the value of his property. Soares Decl., Ex. B, ¶¶ 3, 5. He also visits the Park monthly, and the constant noise from air tours makes it impossible for him to enjoy the natural environment. *Id.,* ¶ 7. ATMPs that would minimize impacts on visitors and wildlife would allow him to better plan his visits to the Park to avoid overflights and increase his enjoyment. *Id.*, ¶ 8. *See also* Ernst Decl., Ex. C; and Contreras Decl., Ex. D, attesting that these HiCoP members' enjoyment of the Park and their own properties has been diminished by air tours.

### B. PEER

Ten PEER members have submitted declarations related to Bryce Canyon National Park, Glacier National Park, Haleakala National Park, Lake Mead National Recreation Area, Muir Woods National Monument, and Great Smoky Mountains National Park.

Dick Hingson hikes and camps in Bryce Canyon, where overflights have diminished his enjoyment by interfering with the wilderness and the natural sounds of wildlife. Hingson Decl., Ex. E, ¶¶ 5-7. Bill Hutchison, a former employee and current hiker and camper in Glacier National Park, has his park experience ruined

22

by flights over the Park every 15 minutes.  Hutchison Decl., Ex. F, ¶¶ 3-6.  Dennis

Divoky, a retired Park Fire Ecologist and current hiker in Glacier, is disturbed by

air tours even in the most remote areas of the Park.  Divoky Decl., Ex. G, ¶¶ 3-6.

His quiet enjoyment and the value of his property are also diminished by air tours

over the Park. *Id.*, ¶ 7-9.  Steve Gniadek is also a retired employee and current

hiker and camper in Glacier whose experiences are diminished by air tours.

Gniadek Decl., Ex. H, at ¶¶ 2-7.

Matt Wordeman is the president of the Friends of Haleakala National Park.

Wordeman Decl., Ex. I, ¶ 2. Overflights have disrupted the wilderness service trip

program of his organization as well as his own enjoyment of the Park.  *Id.* at ¶¶ 3-

7.  Jim Boone, a retired ecologist and NPS employee, is now a public lands

activist and has a business leading birding and hiking trips. Boone Decl., Ex. J, ¶¶

3, 4.  He is a hiker in Lake Mead, Bryce Canyon and Muir Woods. *Id.,* ¶ 5. All of

his activities in these parks, including photographing wildlife, hiking, writing, and

his trips with his business are disrupted by air tours. *Id.* at ¶¶ 6-11.

Tom Martell is the operator of a tour business in Muir Woods. Martell

Decl., Ex. K, ¶ 2.  Air tours that shatter the silence in the park negatively affect his

business and his own enjoyment of the woods.  *Id.,* ¶¶ 3-9.  Dan Dugan is engaged

in the business of nature and soundscape recording in Muir Woods, Bryce Canyon

and Haleakala National Park, where air tours interrupt the soundscape and affect

the behavior of wildlife, ruining the aesthetics of the audio recordings and diminishing his enjoyment of the parks. Dugan Decl., Ex. L, ¶¶ 3, 5, 6. The overflights also disrupt his work identifying species and making other observations based on his recordings. *Id.*, ¶ 7. Gina Farr is an environmental educator whose own experience, and that of her students, in Muir Woods is diminished by overflights. Farr Decl., Ex. M, ¶¶ 4-8. Finally, Vesna Plakanis owns a guide service in Great Smoky Mountains National Park. Plakanis Decl., Ex. N, ¶ 3-4. Overflights diminish her ability to fulfill the mission of her business customers positive experiences with nature, and harm her own enjoyment of the Park. *Id.,* ¶¶ 6-10.

## CONCLUSION

This court should issue a writ of mandamus to the FAA and its Administrator and the NPS and its Director directing that they complete ATMPs for all of the covered parks within 24 months, in compliance with all statutory and regulatory requirements for those plans, unless by that time, all of the commercial air tour operators over those parks have entered voluntary agreements that are compliant with all statutory and regulatory requirements.

Respectfully submitted,

_____/s/_____
Paula Dinerstein
D.C. Bar No. 333971
Public Employees for Environmental Responsibility (PEER)

24

962 Wayne Ave., Suite 610
Silver Spring, MD 20910
202-265-7337 (tel)
202-265-4192 (fax)
pdinerstein@peer.org

Attorneys for Petitioners

February 14, 2019

**ADDENDUM**

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Petitioners certifies as follows:

## A.    Parties and Amici

The Petitioners are Public Employees for Environmental Responsibility (PEER) and Hawaii Island Coalition Malama Pono (HICoP). The Respondants are the Federal Aviation Administration (FAA) and its Acting Administrator, Dan Elwell, and the National Park Service (NPS) and its Deputy Director, P. Daniel Smith (exercising the authority of the Director).  No Amici are currently anticipated in this court.

## B.    Rulings Under Review

There are no rulings under review.  Petitioners seek a writ of mandamus to order the Federal Aviation Administrator and National Park Service Director to develop Air Tour Management Plans (ATMPs) or voluntary agreements for Hawaii Volcanoes National Park, Haleakalā National Park, Lake Mead National Recreation Area, Muir Woods National Monument, Glacier National Park, Great Smoky Mountains National Park, and Bryce Canyon National Park.

## C.    Related Cases

The petitioners previously filed a complaint in the United States District Court for the District of Columbia seeking similar relief to that sought here.  *Public*

i

*Employees for Environmental Responsibility and Hawaii Island Coalition Malama Pono v. Federal Aviation Administration*, No. 17-cv-2045 (D.D.C.) The action was voluntarily dismissed by the petitioners on January 19, 2018.

The Petitioners also filed a writ of mandamus in this Court, No. 18-044. That petition was dismissed on November 13, 2018 on standing grounds because the court found that Petitioners injury was not redressable without the participation of the National Park Service as a party.  Doc. 1759626.

_____/s/_____

Paula Dinerstein
Attorney for Petitioners PEER and HiCoP

–

## DISCLOSURE STATEMENT (PEER)

As required by Circuit Rule 26.1 Petitioner, Public Employees for

Environmental Responsibility (PEER), files this Disclosure Statement.

PEER is a non-profit, tax-exempt corporation incorporated in the District of

Columbia. Its purposes include educating employees of resource

management and environmental protection agencies nationwide, and the

public, about environmental ethics and to assist those who speak out on

behalf of environmental ethics.  PEER has no parent companies and no

publicly-owned company has a 10% or greater ownership interest in PEER.


_____/s/_____

Paula Dinerstein

Attorney for PEER

## DISCLOSURE STATEMENT (HICoP)

As required by Circuit Rule 26.1 Petitioner, Hawaii Island Coalition Malama Pono (HICoP), files this Disclosure Statement.  HICoP is a non-profit advocacy coalition of over 300 homeowners whose houses are impacted by air tours headed towards Hawaii Volcanoes National Park.  HICoP has no parent companies and no publicly-owned company has a 10% or greater ownership interest in HICoP.


_____/s/_____
Paula Dinerstein
Attorney for HICoP

## CERTIFICATE OF COMPLIANCE

With Type-Volume Limit, Typeface Requirements and Type-Style
Requirements

1.      This document complies with the type-volume limit of Fed. R. App.
P. 21 (d)(1).

This document contains 5,679 words.

2.      This document complies with the typeface requirements of Fed. R.
App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because

This document has been prepared in a proportionally spaced typeface using

Times New Roman, 14 point.

_____/s/_____
Paula Dinerstein
Attorney for Petitioners PEER and HICoP

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on this 14th day of February, she served by first class mail copies of this Petition for Mandamus, with exhibits, on counsel for Respondents listed below:

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
ERIC GRANT
*Deputy Assistant Attorney General*
ELLEN J. DURKEE
*Attorney, Appellate Section*
*Environment and Natural Resources Division*
*U.S. Department of Justice*
*P.O. Box 7415*
*Washington, D.C. 20044*
    *(202) 514-4426*

MICHAEL S. FINEMAN
CATHERINE M. BASIC
Airports and Environmental Attorneys
Federal Aviation Administration
800 Independence Ave., SW
Washington, DC 20591

National Park Service, U.S. Department of the Interior
1849 C Street NW
Washington, D.C. 20240

_____/s/_____
Paula Dinerstein