CASE ARGUED DECEMBER 9, 2019

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 19-1044

IN RE: PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY
AND HAWAII ISLAND COALITION MALAMA PONO,

Petitioners
_____

ON PETITION FOR A WRIT OF MANDAMUS
_____

**THIRD MOTION TO ENFORCE ORDER
GRANTING PETITION FOR MANDAMUS**

The Court's deadline for compliance with the National Parks Air Tour Management Act ("NPATMA" or "Act") has now passed, and the Federal Aviation Administration ("FAA") and the National Park Service ("NPS") (collectively, "agencies") still have not completed Air Tour Management Plans ("ATMPs" or "Plans") for nine parks, and project that completion will take another nine months to nearly two years. In addition, 12 of the 13 the now-completed Plans fail to comply with NPATMA's National Environmental Policy Act ("NEPA") requirement for an environmental assessment ("EA") or environmental

impact statement ("EIS"), and therefore those parks are not in compliance either. 49 U.S.C. § 40128(b)(2).[1]

Accordingly, Petitioners file a Third Motion to Enforce the Court's Order granting their petition for mandamus. They renew their request to prohibit air tours over the parks subject to this Court's Order until there is full compliance with NPATMA. In addition to Glacier National Park, the National Parks of the New York Harbor is not subject to this Motion because the agencies have entered voluntary agreements in lieu of an ATMP there, and voluntary agreements are not subject to NEPA. 49 U.S.C. § 40128(a)(7)(C). Thus, there are 21 parks subject to this Motion.[2] Compliance for these 21 parks can be achieved by limiting air tours

---

[1] The one exception is Glacier National Park, where the NPS had completed an Environmental Impact Statement for its 1999 General Management Plan that selected a preferred alternative of banning all commercial air tours. Record of Decision for Air Tour Management Plan for Glacier National Park at 1-2, available at https://parkplanning.nps.gov/document.cfm?parkID=61&projectID=103520&documentID=123082. The ATMP implements the decision based on the 1999 EIS by phasing out air tours by attrition until December 31, 2029, at which time all air tours will permanently cease. *Id.* at 9. Therefore, the Glacier ATMP rests on the earlier NEPA compliance.

[2] The nine Parks that have yet to issue Plans that are subject to this Motion are: Badlands National Park, Mount Rushmore National Memorial, Hawaii Volcanoes National Park, Haleakala National Park, Bandelier National Monument, Lake Mead National Recreation Area, Glen Canyon National Recreation Area, Rainbow Bridge National Monument, and Canyon de Chelly National Monument.

The 12 Parks that have issued Plans without NPATMA-required environmental review that are subject to this Motion are: Olympic National Park, Mount Rainier

to no more than 50 per year over each park, as parks with 50 or fewer flights per year are exempt from NPATMA's requirements. 49 U.S.C. § 40128(a)(5).

In the alternative to forbidding air tours beyond 50 per year over non-compliant parks, the Court could hold the agencies in contempt, and impose fines or other sanctions for each continued day of non-compliance with the Court's Order.

Petitioners previously filed two Motions to Enforce on similar grounds to those here. The first motion was denied and the second was granted only in part. However at those times, a grant of full relief may have been considered premature, as it was before the deadline for completion of ATMPs and before there was final action on any ATMP. Now, violations of the Court's Order are fully realized, both in terms of missing the deadline and of lack of NEPA compliance, and further relief is warranted.

BACKGROUND

On May 1, 2020, this Court granted the Petition for Writ of Mandamus in this case, and ordered the agencies to submit a proposed schedule for "bringing all

---

National Park, Death Valley National Park, Bryce Canyon National Park, Arches National Park, Canyonlands National Park, Natural Bridges National Monument, Great Smoky Mountains National Park, Golden Gate National Recreation Area, Point Reyes National Seashore, Muir Woods National Monument and San Francisco Maritime National Historic Park (the latter four are combined into one ATMP for the San Francisco Bay Area Parks).

twenty-three parks into compliance within two years." Per Curiam Order, Doc. #1840824; Opinion, Doc. #1840825 at 14-15. The agencies then filed a proposed plan ("Completion Plan") providing for the 23 parks to come into compliance with NPATMA within two years of that submission, or by August 31, 2022. Doc # 1859178 at 1-2, Ex. A thereto at 5-6 (August 31, 2020). The agencies' Completion Plan was accepted by the Court on November 20, 2020. Doc. #1872354.

On October 12, 2021, Petitioners filed a Motion to Enforce Order Granting Petition for Mandamus, Doc. # 1917620 ("First Motion"), on the basis that it then appeared that the agencies were not on track to comply with the Court's Order because they were not taking steps to comply with NPATMA's NEPA requirements with respect to their preparation of ATMPs. NPATMA requires EISs or EAs in connection with ATMPs. 49 U.S.C. § 40128(b)(2). At that time, the agencies had issued 11 draft ATMPs with no NEPA analysis or any mention of NEPA at all. The relief sought in the First Motion was to order the agencies to comply with NPATMA by preparing an EIS or EA for each ATMP.

The agencies responded that they could use Categorical Exclusions from NEPA ("CEs") to comply with NEPA and NPATMA, and that they currently anticipated applying CEs with regard to the 12 draft ATMPs that had been issued at the time of their response. Doc. 1921223 at 9 (Nov. 5, 2021). Petitioners replied that CEs for ATMPs did not comply with NPATMA. Doc. #1922234 at 2-

4

10 (Nov. 12, 2021). On January 14, 2022, the Court denied the First Motion without discussion. Doc. #1930698.

Subsequently, Petitioners filed a "Second Motion to Enforce Order Granting Petition for Mandamus," Doc. # 1938509 (March 9, 2022) ("Second Motion"). Petitioners reported that through five Progress Updates over more than a year, the agencies had reported that they were on track to complete all required ATMPs in accordance with the approved Completion Plan, i.e., by August 31, 2022. Then, for the first time, on February 28, 2022, the agencies reported that they would not meet the deadline for several of the parks, missing it by up to 18 months. *See* Progress Update, Feb. 28, 2022, Doc. #1936907. The Second Motion also reported that all of the parks claimed to be on track to meet the Court's deadline were slated for CEs from NEPA. Second Motion at 2, citing February 28, 2022 Progress Update at 2. Petitioners claimed that because using CEs for ATMPs would violate NPATMA, those parks too were not actually on track. Second Motion at 4-6. The remedy sought was to order that no air tours could take place in parks that did not have an ATMP in place by the Court's deadline of August 31, 2022.

On June 21, 2022, the Court granted in part the Second Motion to Enforce. Doc. #1951365. It ordered the Agencies to file a joint supplemental report by July 21, 2022 in which they "(1) explain why the agencies were unaware that they were behind schedule as of their November 24, 2021 status report; (2) propose firm

5

compliance dates for each park; and (3) provide the legal basis for any anticipated categorical exclusion and the date by which the agencies will make that determination." The Court denied without prejudice Petitioners' request for an order limiting air tours at noncompliant parks.

The agencies filed the ordered Joint Supplemental Report on July 21, 2022. Doc. # 1955988. In it they admitted that projected completion dates they submitted in then most recent May 2022 Progress Update had slipped even further, and proposed new "firm compliance dates" for each park. For all of 13 parks with completed or planned CEs, the categorical exclusion determination was scheduled for the same date as the completion date for the Plan. *Id.* at 19-20. In other words, the final decision to invoke a CE and the documentation for the CE would only be completed and made public at the time of the finalization of the Plan, and thus there would be no opportunity for public participation or comment on either. The purported legal basis for the use of CEs was the application of the NPS CE for "changes or amendments to an approved action when such changes would cause no or only minimal environmental impacts," with the Interim Operating Authority that had been granted pending completion of ATMPs as the "approved action." *Id.* at 14-15, citing Department of the Interior's Manual Part 516 § 12.5(A)(1).

The current status of compliance was reported in the most recent Progress Report of February 28, 2023, Doc. #1987865. There are basically two categories

6

of ATMPs: 12 that have been completed on the basis of CEs, and nine that have not been completed and have EAs planned.[3] The projected completion dates for the nine parks extend from December 31, 2023 to December 31, 2024, i.e. up to two years and four months beyond the court-ordered deadline.

ARGUMENT

1. <u>The Extensive Additional Unreasonable Delay in Producing ATMPs for Nine Parks Necessitates Additional Relief</u>

This is an unreasonable delay case in which there had been nearly two decades of delay in complying with NPATMA at the time the Court issued its decision in May 2020. The Court granted the extraordinary remedy of mandamus, noting that far shorter delays had been found to be "nothing less than egregious." *In re Public Employees for Env't Responsibility*, 957 F.2d 267, 274 (D.C. Cir. 2020) (citations omitted). The Court directed compliance within two years, or if the agencies anticipated it would take more than two years, to offer specific, concrete reasons for why that was so in their proposed schedule. *Id.* at 275-276. The agencies did not offer any such reasons, but submitted a proposed plan that would achieve compliance within two years, by August 31, 2022. Yet, despite the already "egregious" delay and the commitment that it would last no more than two

---

[3] As noted above, there is also one park, the National Parks of New York Harbor, where voluntary agreements were completed. The Glacier National Park ATMP is based on a prior EIS.

7

more years, in February 2022 the agencies first disclosed that several parks would not meet the deadline by significant periods of time. After that, there were additional projected delays which continue today. These delays should not be accepted without the grant of further relief.

The agencies now acknowledge that nine parks of the 23, more than one third, will not come into compliance until as late as December 2024, up to more than two years beyond the August 2022 deadline. Given the moving target of the agency's projected completion dates over the course of this litigation, absent court intervention, even further delays are likely. The agencies' latest Progress Update does not inspire confidence that they are on track even for the latest projected completion dates.

For five of the nine parks, the agencies merely report that they are either "preparing" or "reviewing" a draft environmental assessment and ATMP. *See* February 2023 Progress Update at 3-4.[4] Yet, no such drafts have been made public, and the agencies do not reveal what tasks they have completed since the last Progress Report, what remains to be done, or how it will be accomplished by the new projected completion date. In fact, little has changed since the last Progress Report on November 30, 2022, which likewise stated for these parks that

---

[4] These are Badlands National Park, Mount Rushmore National Memorial, Hawaii Volcanoes National Park, Haleakala National Park, and Bandelier National Monument.

the agencies were drafting an environmental assessment, or, in the case of Bandelier National Monument, that the agencies had identified alternatives to be considered in a draft environmental assessment.  Doc. #1975557 at 4.

For the remaining four parks, the agencies haven't begun to prepare environmental assessments, but are still performing preliminary tasks nearly three years after the Court issued its mandamus order and more than six months after the deadline for completion of all ATMPs.  For Lake Mead National Recreation Area, the agencies are still working to determine which flights over the park are even subject to NPATMA.  February 28, 2023 Progress Update at 4. At Glen Canyon National Recreation Area and Rainbow Bridge National Monument the agencies are still "identifying a proposed action and/or alternatives" and preparing to *initiate* tribal consultation.  *Id.*  Those three parks were in the identical position in November 2022.  November 30, 2022 Progress Update at 4-5.  At Canyon de Chelly, the agencies have developed the alternatives to be considered in an environmental assessment.  February 28, 2023 Progress Report at 5.  In the previous Progress Report the agencies were working to develop those same alternatives.  November 30, 2022 Progress Report at 5.

In sum, the delay is now well beyond egregious, and shows no signs of ending.  There must be consequences for the additional delay, and the purposes of NPATMA to protect visitor experience and the natural resources of the parks and

9

tribal lands should not be further compromised by allowing continued air tours without the statutorily-required Plans intended to protect those very values. *See* 49 U.S.C. § 40128(b)(1)(B): "Objective. The objective of any air tour management plan shall be to develop acceptable and effective measures to mitigate or prevent the significant adverse impacts, if any, of commercial air tour operations upon the natural and cultural resources, visitor experiences, and tribal lands." Additional air tours should not be permitted until compliance with NPATMA is achieved, or in the alternative, the Court should hold the agencies in contempt and impose sanctions.

2. <u>ATMPs based on CEs Do Not Comply with NPATMA and Cannot Serve to Authorize Air Tours</u>

Compliance with NPATMA is not achieved by Plans based on CEs. This is first and foremost evidenced by the plain language of the Act:

> Environmental determination. In establishing an air tour management plan under this subsection, the Administrator [of FAA] and the Director [of NPS] shall each sign the environmental decision document required by section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. 4332) which may include a finding of no significant impact, an environmental assessment, or an environmental impact statement and the record of decision for the air tour management plan.

49 USC § 40128(b)(2). NPATMA thus specifically directs that an ATMP must be accompanied by an EA (which may include a finding of no significant impact) or an EIS. CEs are not included in the environmental decision documents statutorily required for ATMPs. There would be no purpose for the statute to set out the

10

appropriate environmental documents for an ATMP if other means of environmental compliance such as CEs were also acceptable. Reading another form of NEPA compliance into the list set out in the statute violates the *expressio unius est exclusio alterius* cannon of statutory construction, that expression of one thing implies the exclusion of others, *Delaware v. Pennsylvania*, 2021 U.S. LEXIS 6295 at *101 (July 23, 2021), or that "expressing one item of an associated group or series excludes another left unmentioned." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 290 (2017).

    Apart from its plain language, it is obvious from the purpose and structure of NPATMA why an EA or EIS would be required. The impetus for the Act was that air tours had been taking place over national parks for many years without any environmental review, and damage to park resources and visitor experience was occurring as a result. As the House Committee Report on NPATMA stated, the legislation was a response to "an increase in complaints by park users that the serenity and quiet of national parks is being destroyed." H. Rpt. 106-167 at 93 (1999). The Act required a radical change in approach – requiring comprehensive environmental review to inform Plans that would "mitigate or prevent" "significant adverse impacts … upon the natural and cultural resources, visitor experiences, and tribal lands." 49 U.S.C. § 41028(b)(1)(B).

The Plans would do so by means of measures that could include prohibiting commercial air tours altogether; restricting air tours to designated routes, altitudes, and times of day; limiting numbers of flights and intrusions on tribal lands; and mitigation of noise, visual and other impacts. § 40128(b)(3)(A) and (B). The idea that a Plan could be pre-determined to have minimal environmental impacts without full NEPA analysis is anathema to the Act's purpose and would only perpetuate the situation the Act was designed to correct.

The categorical exclusion invoked by the agencies is particularly inapt in the context of a statute whose purpose was to remedy the situation where air tours were occurring without environmental analysis or mitigation of adverse effects. The agencies use the categorical exclusion for changes to existing "approved actions" that cause minimal or no *additional* environmental impacts, in order to be able to ignore the environmental impacts of the existing flights that the statute was meant to address. The agencies use as the "approved action" the number of flights permitted based on Interim Operating Authority over the last three years before the pandemic, 2017-2019. They thus eschew environmental review of the impacts of those flights because the ATMP did not make things *worse* than that existing condition. In essence, the agencies are grandfathering in the existing flights that NPATMA was enacted to analyze and mitigate. The result of accepting this ruse would be that the agencies' now 23-year non-compliance with the Act would be

made permanent, as the environmental impacts of the existing air tours would never be analyzed or mitigated.

The completed ATMPs do in some cases add some restrictions that did not exist under Interim Operating Authority regarding flight routes, altitudes and times of day for the existing number of flights.  However, this is a far cry from the rigorous NEPA review that would actually analyze the environmental impacts from the existing flights and how to mitigate them, and include the consideration of alternatives and public participation.

The agencies claim that they can use the existing flights permitted under Interim Operating Authority as the environmental baseline because the grant of Interim Operating Authority "was a non-discretionary action directed by Congress. *See* 49 U.S.C. § 40128(c)."  Joint Supplement Report of the Federal Aviation Administration and the National Park Service," Doc. #1955988 at 16.  This explanation mercilessly twists the Act, which provided for Interim Operating Authority so air tour operators would not go out of business while the ATMPs, *with the required full environmental review*, were being prepared.  It did not mandate Interim Operating Authority in order to enshrine the status quo, but to create a bridge to full environmental review for ATMPs – a bridge that as this Court found, was only intended to last two years from NPATMA's enactment in 2000,  "We fully expect that the agencies will make every effort to produce a plan

13

that will enable them to complete the task within two years, as Congress directed."

*In re Public Employees*, 957 F3d at 276.

As the FAA itself recognized:

> Congress set up the IOA [interim operating authority] process as a way of ensuring that those commercial air tour operators conducting commercial air tours over national parks at the time of Act's enactment would not be put out of business while the FAA, in cooperation with NPS, *analyzed the environmental impact of the air tours* on the national park unit and developed an ATMP. The IOA then ends 180 days after the ATMP is adopted.
> ….
> IOA was designed as a temporary solution to allow operators already conducting air tours at the time of the enactment of the Act to continue to operate pending completion of the ATMP, or new entrants to begin operation to ensure competition.

"Notice of Final Opinion on the Transferability of Interim Operating Authority under the National Parks Air Tour Management Act," 72 Fed. Reg. 6802, 6803 (Feb. 13, 2007) (emphasis added).

In sum, NPATMA directs the preparation of an EIS or EA for ATMPs, and does not permit the use of a CE. Using CEs to lock in the existing status quo of air tours that never underwent environmental review, and now never will, undermines the entire purpose of the Act and of this Court's order to comply with NPATMA.

## CONCLUSION

The agencies have yet to comply with NPATMA for 21 of the 23 parks subject to this Court's grant of mandamus. Because of the extensive and continuing delays on top of the original 20-year "egregious" delay, as well as the

14

agencies' failure to comply with NPATMA's NEPA requirements for the Plans they have supposedly completed, the Court should grant relief that prevents further harm to park natural resource values, visitor experience and tribal lands until there is full compliance with the Act.  This Court should order that no air tours beyond the 50 tours per year that are exempt from NPATMA may take place until a fully compliant ATMP, based on an environmental assessment or environmental impact statement is in place.

In the alternative, the Court should hold the agencies in contempt for failing to comply with its mandamus order, and impose fines or other sanctions until compliance is achieved.

Respectfully submitted,

_____/s/ Paula Dinerstein_____
Paula Dinerstein
D.C. Bar No. 333971
Public Employees for Environmental Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
202-265-7337 (tel)
202-265-4192 (fax)
pdinerstein@peer.org

Attorneys for Petitioners

Dated:  March 10,  2023

# ADDENDUM

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Petitioners certifies as follows:

**A.　Parties and Amici**

The Petitioners are Public Employees for Environmental Responsibility (PEER) and Hawaii Island Coalition Malama Pono (HICoP). The Respondants are the Federal Aviation Administration (FAA) and its Acting Administrator, Billy Nolen, and the National Park Service (NPS) and its Director, Charles F. "Chuck" Sams. No Amici are currently admitted or anticipated in this court.

**B.　Rulings Under Review**

There are no rulings under review.  Petitioners sought a writ of mandamus to order the Federal Aviation Administrator and National Park Service Director to develop Air Tour Management Plans (ATMPs) or voluntary agreements for national parks in accordance with the National Parks Air Tour Management Act.  A writ was granted and Petitioners now seek to enforce it.

**C.　Related Cases**

The petitioners previously filed a complaint in the United States District Court for the District of Columbia seeking similar relief to that sought here.  *Public Employees for Environmental Responsibility and Hawaii Island Coalition Malama*

*Pono v. Federal Aviation Administration*, No. 17-cv-2045 (D.D.C.) The action was voluntarily dismissed by the petitioners on January 19, 2018.

The Petitioners also filed a writ of mandamus in this Court, No. 18-044. That petition was dismissed on November 13, 2018 on standing grounds because the court found that Petitioners' injury was not redressable without the participation of the National Park Service as a party. Doc. 1759626.

/s/

Paula Dinerstein
Attorney for Petitioners PEER and HiCoP

## DISCLOSURE STATEMENT (PEER)

As required by Circuit Rule 26.1 Petitioner, Public Employees for Environmental Responsibility (PEER), files this Disclosure Statement. PEER is a non-profit, tax-exempt corporation incorporated in the District of Columbia and headquartered in Silver Spring, MD. Its purposes include educating employees of resource management and environmental protection agencies nationwide, and the public, about environmental ethics and to assist those who speak out on behalf of environmental ethics. PEER has no parent companies and no publicly-owned company has a 10% or greater ownership interest in PEER.

_____/s/_____
Paula Dinerstein

Attorney for PEER

## DISCLOSURE STATEMENT (HICoP)

As required by Circuit Rule 26.1 Petitioner, Hawaii Island Coalition Malama Pono (HICoP), files this Disclosure Statement. HICoP is a non-profit advocacy coalition of over 300 homeowners whose houses are impacted by air tours headed towards Hawaii Volcanoes National Park. HICoP has no parent companies and no publicly-owned company has a 10% or greater ownership interest in HICoP.

                                           _____/s/_____
                                           Paula Dinerstein
                                           Attorney for HICoP

## CERTIFICATE OF COMPLIANCE

With Type-Volume Limit, Typeface Requirements and Type-Style Requirements

This document complies with the type-volume limit of Fed. R. App. P. 21 (d)(1), and Rules 32(a)(5) and (a)(6). It is prepared in proportionally spaced typeface using Times New Roman, 14 point. This document contains 3,474 words, not including the items exempted by Federal Rule of Appellate Procedure 32(f).


   /s/ Paula Dinerstein_____
Paula Dinerstein
Attorney for Petitioners PEER and HICoP