ARGUED DECEMBER 9, 2019

No. 19-1044

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY
and HAWAII COALITION MALAMA PONO,
*Petitioners*.

On Petition for Writ of Mandamus

**RESPONDENTS' OPPOSITION TO
PETITIONERS' THIRD MOTION TO ENFORCE**

Of Counsel:

MARC A. NICHOLS
*Chief Counsel*
SCOTT MITCHELL
*Assistant Chief Counsel*
PATRICIA DEEM
*Attorney*
Office of the Chief Counsel
Federal Aviation Administration

SARAH KRAKOFF
*Deputy Solicitor for Parks and Wildlife*
SARA PORSIA
*Attorney*
Office of the Solicitor
U.S. Department of the Interior

TODD KIM
*Assistant Attorney General*
JUSTIN D. HEMINGER
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7411
Washington, D.C. 20044
(202) 514-5442
justin.heminger@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................1

BACKGROUND ..................................................................................2

    A.    The Court's Orders and the agencies' approved Plan ..........................2

    B.    Petitioners' First and Second Motions to Enforce ...............................4

    C.    The agencies' Compliance Schedule ...................................................5

    D.    The agencies' progress .........................................................................6

SUMMARY OF ARGUMENT .................................................................8

ARGUMENT .........................................................................................9

I.    The agencies continue to comply with the Court's Orders to bring all eligible parks into compliance with the Act. ....................................9

II.    Petitioners' challenge to completed plans should be rejected. ......................11

    A.    This mandamus case is not a proper vehicle for challenging the completed plans. ........................................................12

    B.    The Air Tour Management Act gives the agencies discretion to determine the appropriate level of NEPA review. ..................................................................................15

III.    Petitioners fail to show they are entitled to the extraordinary injunctive remedy or sanctions. ...................................................17

CONCLUSION ....................................................................................24

CERTIFICATE OF COMPLIANCE ........................................................25

TABLE OF EXHIBITS

i

## TABLE OF AUTHORITIES

### Cases

*American Hospital. Ass'n v. Burwell,*
    812 F.3d 183 (D.C. Cir. 2016)....................................................................13, 14

*Anglers Conservation Network v. Pritzker,*
    809 F.3d 664 (D.C. Cir. 2016)..............................................................................15

*Armstrong v. Executive Off. of the President,*
    1 F.3d 1274 (D.C. Cir. 1993)................................................................................23

*Camp v. Pitts,*
    411 U.S. 138 (1973)..............................................................................................13

*Chaplaincy of Full Gospel Churches v. England,*
    454 F.3d 290 (D.C. Cir. 2006)..............................................................................21

*Cobell v. Norton,*
    334 F.3d 1128 (D.C. Cir. 2003)............................................................................23

*In re GTE Serv. Corp.,*
    762 F.2d 1024 (D.C. Cir. 1985)............................................................................13

*In re Public Employees for Environmental Responsibility,*
    957 F.3d 267 (D.C. Cir. 2020)...............................................2, 13, 17, 19, 20

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010)..............................................................................................20

*N.Y. Republican State Committee v. SEC,*
    799 F.3d 1126 (D.C. Cir. 2015)............................................................................22

*Nken v. Holder,*
    556 U.S. 418 (2009)..............................................................................................21

*NLRB v. SW Gen., Inc.,*
    580 U.S. 288 (2017)..............................................................................................16

*Power v. Barnhart*,
    292 F.3d 781 (D.C. Cir. 2002).........................................................................14

*Telecomms. Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1974)..........................................................................12

*Winter v. Natural Resources Defense Council*,
    555 U.S. 7 (2008)....................................................................................17, 18, 21

*Wisconsin Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985).........................................................................20

**Statutes and Court Rules**

Administrative Procedure Act
    5 U.S.C. § 704...............................................................................................13

National Parks Air Tour Management Act of 2000
    49 U.S.C. § 40128...........................................................................................2

    49 U.S.C § 40128(b)(2)...................................................................15, 16, 17

    49 U.S.C § 40128(b)(3)(A)...............................................................................20

    49 U.S.C. § 40128(c)(1) ................................................................................20

Federal Aviation Act
    49 U.S.C. § 46110(a).....................................................................................13

Fed. R. App. P. 15(a)(1)..........................................................................................13

**Federal Register Notice**

87 Fed. Reg. 43,595 (July 21, 2022).....................................................................6

## INTRODUCTION

This is Petitioners' third motion to "enforce" this Court's May 2020 order granting their petition for a writ of mandamus. Since their last motion, the Federal Aviation Administration (FAA) and the National Park Service have brought 14 National Park System units at issue into compliance with the National Parks Air Tour Management Act. Despite this progress, Petitioners again seek extraordinary injunctive relief against the agencies and alternatively request contempt sanctions. The motion should be denied for three reasons.

*First*, the agencies continue to comply with the Court's orders. In response to Petitioners' Second Motion to Enforce, this Court ordered the agencies to submit a Joint Supplemental Report, signed by the heads of the FAA and the Park Service. In that report, submitted in July 2022, the agencies proposed firm compliance dates for bringing all eligible national parks into compliance with the Air Tour Management Act (the Compliance Schedule). The agencies have adhered to the Compliance Schedule, issuing eight final air tour management plans early and completing voluntary agreements at another park. The agencies also remain on track to bring the remaining nine parks into compliance by the dates in the Compliance Schedule.

*Second*, Petitioners cannot use this mandamus case to seek judicial review of plans that the agencies have now completed. If Petitioners believe that the agencies

have failed to comply with the Air Tour Management Act or the National Environmental Policy Act (NEPA) when issuing a plan, they must assert that claim in a separate lawsuit challenging that final agency action, not in this mandamus case. To that end, Petitioner Public Employees for Environmental Responsibility (PEER) recently filed a petition for review in this Court challenging one of the plans.

*Third*, Petitioners have failed to meet their heavy burden to obtain injunctive relief or contempt sanctions. Petitioners neither invoke the correct legal standards nor present evidence that meets those standards.

In summary, the Court should deny Petitioners' Third Motion and allow the agencies to bring the remaining nine parks into compliance with the Air Tour Management Act under the Compliance Schedule.

## BACKGROUND

### A.    The Court's Orders and the agencies' approved Plan

In their petition for a writ of mandamus, Petitioners requested an order directing the agencies to establish air tour management plans or voluntary agreements under the National Parks Air Tour Management Act of 2000, 49 U.S.C. § 40128, for seven specified National Park System units. *In Re Public Employees for Environmental Responsibility* (*PEER*), 957 F.3d 267, 271 (D.C. Cir. 2020). In May 2020, the Court granted the petition, holding that the agencies had a

2

mandatory duty under the Act to establish plans or voluntary agreements for all eligible parks and that mandamus relief was warranted based on delay in performance of this duty and consideration of the *TRAC* factors. *Id*. at 273; Order (May 1, 2020) (per curiam) (Mandamus Order).

The Mandamus Order directed the agencies to submit a proposed plan and schedule for bringing all 23 National Park System units eligible at that time into compliance with the Act within two years, or to offer "specific, concrete reasons" why it will take longer than two years. Mandamus Order. The Court retained jurisdiction to approve the agencies' proposed plan and monitor the agencies' progress. *Id*. The Mandamus Order directed the agencies to submit progress updates every 90 days after the Court approved the plan. *Id*.

In August 2020, the agencies submitted their Proposed Plan, setting out the agencies' approach and steps for completing plans for all 23 parks referenced in the Court's Order within two years of its submission. In November 2020, the Court approved the Plan (Approval Order).

The agencies made substantial progress under the Plan. The agencies' progress is covered in the agencies' quarterly Progress Updates, four declarations responding to Petitioners' First and Second Motions to Enforce, and the agencies' Oppositions to those Motions to Enforce.

3

## B.    Petitioners' First and Second Motions to Enforce

In October 2021, Petitioners filed their first motion styled as a Motion to Enforce the Order Granting Petition for Mandamus. The Court denied the motion in January 2022. Order (Jan. 14, 2022) (per curiam). Less than two months later, in March 2022, Petitioners filed a Second Motion to Enforce. Petitioners requested that the Court grant new injunctive relief that would require the agencies to ban air tours over parks "that do not have statutorily-compliant [Air Tour Management Plans] by" August 31, 2022, the date in the agencies' Plan. Second Motion 9.

In a June 2022 Order, the Court granted in part Petitioners' Second Motion. The Court ordered the agencies to file a Joint Supplemental Report "in which they: (1) explain why the agencies were unaware that they were behind schedule as of their November 24, 2021 status report; (2) propose firm compliance dates for each park; and (3) provide the legal basis for any anticipated categorical exclusion and the date by which the agencies will make that determination." Order (June 21, 2022) (per curiam). The Court directed that the supplemental report "shall be signed by the Administrator of the Federal Aviation Administration and the Director of the National Parks Service in addition to counsel for the agencies." *Id*. Finally, the Court denied without prejudice Petitioners' request for an order limiting air tours at noncompliant parks.

4

### C.     The agencies' Compliance Schedule

In July 2022, the agencies submitted the Joint Supplemental Report. Joint Supplemental Report, ECF 1955988 (July 21, 2022). The Report addressed the three topics that the Court identified in the June 2022 Order. At the Court's direction, FAA Acting Administrator Billy Nolen, Park Service Director Charles F. Sams, III, and the agencies' counsel all reviewed and signed the Report.

*First*, the agencies explained that they had accurately reported on their activities and progress in updates submitted to the Court, including the November 2021 Progress Update. Joint Supplemental Report 4-9.

*Second*, the agencies proposed firm compliance dates for each park. *Id*. at 9-14. At that time, the agencies had recently issued final air tour management plans for two national parks—Olympic National Park and Mount Rainier National Park. *Id*. at 9. For the remaining parks, the agencies submitted a chart identifying proposed firm compliance dates (the Compliance Schedule). *Id*. at 19-22. The agencies also explained *why* it would take longer to bring some parks into compliance than others. *Id*. at 10-14. The agencies explained that they anticipated preparing environmental assessments to comply with NEPA at up to nine parks, as well as conducting robust consultation with tribes, State Historic Preservation Officers, and other stakeholders. *Id*.

*Third*, the agencies identified the legal basis for the level of NEPA review that they anticipated for each plan. *Id*. at 14-18.

## D.    The agencies' progress

Since the agencies filed the Joint Supplemental Report with the Compliance Schedule in July 2022, the Court has issued no further orders. In that period, FAA and the Park Service completed the anticipated NEPA review and issued eight plans *before* the relevant dates in the Compliance Schedule. Exhibit 1, Declaration of Raymond Sauvajot (Third Sauvajot Decl.) ¶ 3; Exhibit 2, Declaration of Kevin Welsh (Third Welsh Decl.) ¶ 3. As the chart below shows, the agencies have brought 14 parks into compliance with the Act, and the agencies remain on track to meet the dates in the Compliance Schedule for the nine remaining parks. Third Sauvajot Decl. ¶ 4; Third Welsh Decl. ¶ 4.[1]

---

[1] The agencies terminated the planning process for Everglades National Park when the sole air tour operator at the Park voluntarily surrendered its operating certificate. 87 Fed. Reg. 43,595 (July 21, 2022).

| | Park (or Group of Parks) | Date in the Compliance Schedule | Status |
|---|---|---|---|
| 1. | **Olympic National Park** | Completed before the July 21, 2022 Compliance Schedule | Plan completed on July 20, 2022 |
| 2. | **Mount Rainier National Park** | Completed before the July 21, 2022 Compliance Schedule | Plan completed on July 20, 2022 |
| 3. | **Death Valley National Park** | January 31, 2023 | Plan completed on August 17, 2022 |
| 4. | **Glacier National Park** | January 31, 2023 | Plan completed on September 19, 2022 |
| 5. | **Bryce Canyon National Park** | January 31, 2023 | Plan completed on October 12, 2022 |
| 6. | **Arches National Park** | January 31, 2023 | Plan completed on October 18, 2022 |
| 7. | **Canyonlands National Park** | January 31, 2023 | Plan completed on October 18, 2022 |
| 8. | **Natural Bridges National Monument** | January 31, 2023 | Plan completed on October 18, 2022 |
| 9. | **Great Smoky Mountains National Park** | January 31, 2023 | Plan completed December 2, 2022 |
| 10.-13. | **Golden Gate National Recreation Area/Point Reyes National Seashore/Muir Woods National Monument/San Francisco Maritime National Historical Park** | January 31, 2023 | Plan completed January 10, 2023 |
| 14. | **National Parks of the New York Harbor** | August 31, 2023 | Voluntary agreements signed between the agencies and all operators on January 25, 2023. |

## SUMMARY OF ARGUMENT

The Court should deny Petitioners' Third Motion to Enforce and allow the agencies to continue bringing the remaining nine parks into compliance with the Air Tour Management Act consistent with the Compliance Schedule submitted to the Court in July 2022.

1.     The agencies are complying in good faith with the Court's Orders. To date, 14 eligible parks are now in compliance with the Air Tour Management Act. As for the remaining nine parks, the agencies remain on track to bring them into compliance with the Act by the dates set out in the Compliance Schedule. Petitioners' contrary arguments rest on an incorrect and incomplete reading of the Court's Orders and unsupported speculation about the agencies' progress.

2.     Petitioners also ask the Court to review nine of the ten completed air tour management plans. Petitioners contend that those plans violate the Air Tour Management Act because the agencies relied on a categorical exclusion to comply with NEPA when preparing those plans. But Petitioners cannot use this mandamus case to challenge the completed plans. Those plans are new final agency actions. Any claims challenging the plans must be raised in a new lawsuit, for which Petitioners would need to show standing. Indeed, several groups, including Petitioner PEER, recently petitioned this Court for review of the January 2023 plan

for the San Francisco Bay Area parks. In any event, Petitioners' interpretation of the Act is incorrect.

     3.     Petitioners again request extraordinary injunctive relief that substantially enlarges the relief they sought in their Mandamus Petition. Yet Petitioners do not try to meet the four-factor test for injunctive relief. Enjoining air tours over the parks would undermine the agencies' efforts and harm third parties not before the Court. Finally, Petitioners' alternative request for contempt sanctions against the agencies is unfounded because the agencies continue in good faith to comply with the Court's Orders.

## ARGUMENT

## I.    The agencies continue to comply with the Court's Orders to bring all eligible parks into compliance with the Act.

     The agencies have complied with the Court's Orders. Most recently, the agencies responded to the Court's June 2022 Order by submitting the Compliance Schedule. Now, eight months later, fourteen parks are in compliance with the Act, and the agencies remain on track to bring the nine remaining parks into compliance by the dates set in the Compliance Schedule. The agencies should be allowed to complete that process.

     Petitioners contend that the agencies' delay as to the nine remaining parks is "egregious," but they distort the Court's Mandamus Order. Third Motion 7-10. As in their Second Motion to Enforce, Petitioners interpret the Mandamus Order as if

the Court simply ordered the agencies to complete plans by a fixed deadline.
Second Motion 1-2. As the agencies have explained, the Mandamus Order did not
do that, nor did the Court's Approval Order that followed. *See* Respondents'
Opposition to Petitioners' Second Motion to Enforce 14-16. Reading the
Mandamus Order and Approval Order together, the Court expected the agencies to
do their best to complete plans or agreements for all covered parks within two
years of submitting the Plan and to notify the Court if it became apparent that they
could not meet that timeframe by providing clear and specific reasons why they
need more time. *Id*. The agencies followed the Plan and submitted a clear and
specific explanation why they required more time to bring the parks into
compliance. *Id*. at 16-21.

In response to the parties' filings, the Court granted in part the Second
Motion to Enforce. June 2022 Order. The Court ordered the agencies to propose
"firm compliance dates for each park." *Id*. In July 2022, the agencies did so. The
agencies have brought 14 parks into compliance with the Act, and they issued eight
plans ahead of the relevant dates in the Compliance Schedule. Third Sauvajot Decl.
¶ 3; Third Welsh Decl. ¶ 3; February 2023 Progress Update 2-3. The agencies also
are on track to bring the remaining nine parks into compliance by the dates in the
Compliance Schedule. Third Sauvajot Decl. ¶ 4; Third Welsh Decl. ¶ 4.

Petitioners claim that "absent court intervention, even further delays are likely." Third Motion 8. But the Court *already* intervened last summer in the June 2022 Order, and the agencies complied by filing a schedule with firm completion dates proposed by the heads of both agencies. Since then, the agencies have finished before all proposed dates. February 2023 Program Update 2-3.

Petitioners also compare the agencies' November 2022 Progress Update with the February 2023 Progress Update and claim that "little has changed." *Id*. at 8-9. But the Updates confirm that the agencies are busy with the labor-intensive, complex technical work required to prepare draft environmental assessments for four parks as planned in the proposed Compliance Schedule. *See* November 2022 Progress Update; February 2023 Progress Update. The agencies also remain on track to finish the other five parks by the dates in the Compliance Schedule. Third Sauvajot Decl. ¶ 4; Third Welsh Decl. ¶ 4.

In short, no further intervention by the Court is required because the agencies are complying with the Court's Orders and proceeding under the Compliance Schedule to bring all eligible parks into compliance with the Act.

## II. Petitioners' challenge to completed plans should be rejected.

Although Petitioners style their Motion as one to "enforce" the Court's Mandamus Order, they directly challenge nine of the ten air tour management

11

plans that the agencies have completed thus far. Third Motion 10-14.[2] Petitioners

assert that the Air Tour Management Act requires the agencies to prepare an

environmental assessment or an environmental impact statement to support each

plan. *Id*. 10-14. Because the agencies relied on a documented categorical exclusion

to comply with NEPA for the plans, Petitioners claim that the agencies have failed

to comply with the Air Tour Management Act. *Id*. That claim cannot be pursued in

Petitioners' petition for a writ of mandamus, much less in a motion filed years after

this Court disposed of that petition. In any event, Petitioners are incorrect on the

merits.

**A.    This mandamus case is not a proper vehicle for challenging the completed plans.**

Petitioners cannot challenge completed plans in this mandamus case. This

Court has subject-matter jurisdiction over a petition for writ of mandamus to

review a claim that an agency has unreasonably delayed taking final action if the

Court also will have exclusive subject-matter jurisdiction to review the final action.

*See, e.g.*, *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 74-94 (D.C.

Cir. 1974). But that jurisdiction is over claims involving the "*lack* of a final order."

*Id*. at 75 (emphasis added); *id*. at 79. By contrast, the Records of Decision in which

---

[2] Petitioners decline to challenge the plan for Glacier National Park because the agencies relied on a 1999 Environmental Impact Statement in addition to a documented categorical exclusion. Third Motion 2 n.1.

the agencies adopted the plans are final agency actions that are reviewable in a petition for review. *See* Fed. R. App. P. 15(a)(1); 49 U.S.C. § 46110(a) (providing for review of FAA orders in the courts of appeals); *In re GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) ("It is beyond dispute that a court does not have jurisdiction to review an agency order unless a petition for review of the order has been filed in that court.") (cleaned up). Review of those final agency actions must be based on the administrative record. 5 U.S.C. § 704; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Court cannot review air tour management plans in a mandamus action, only order that the agencies complete them.

The Court recognized this distinction when it granted mandamus. *PEER*, 957 F.3d at 273. The agencies contended that completion of plans is not a ministerial activity because the agencies "must exercise their 'discretion' over 'the environmental analyses and action [that they] will approve.'" *Id*. The Court explained, however, that while the *content* of the plans may be discretionary, the *creation* of a plan is not. *Id*. And the Court emphasized that "Petitioners do not seek to control the content of the plans; they 'simply seek[] to compel the [agencies] to make decisions within the statutory time frames.'" *Id*. (quoting *American Hospital. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016)). Petitioners ask this Court to exceed the limits on mandamus relief by reviewing the *content* of plans.

Mandamus is a "drastic" remedy, to be invoked "only in extraordinary circumstances." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (cleaned up). To justify mandamus relief, Petitioners must show (1) a clear and indisputable right to relief, (2) that the agency is violating a clear duty to act, and (3) that no adequate alternative remedy exists. *Am. Hosp. Ass'n*, 812 F.3d at 189 (cleaned up). Yet Petitioners have an adequate alternative judicial remedy—filing a new lawsuit seeking review of any plan they think is deficient.

In fact, Petitioner PEER has already availed itself of that adequate alternative remedy. On March 13, 2023, PEER and other groups petitioned for review of the agencies' record of decision approving the January 2023 air tour management plan for the San Francisco Bay area parks. Petition for Review, *Marin Audubon Society v. U.S. Department of Transp.*, No. 23-1067, ECF No. 1990276 (D.C. Cir. Mar. 13, 2023). Petitioner PEER is asking the Court to review on mandamus one of the same plans it is also challenging in a petition for review.

Any judicial review of completed plans must happen in a new lawsuit seeking review of the agencies' final action. Put differently, Petitioners cannot bypass the requirements for judicial review—showing standing, satisfying subject-matter jurisdiction requirements, and challenging final action on the administrative record—by asking the Court to review those plans in this mandamus case.

**B.     The Air Tour Management Act gives the agencies discretion to determine the appropriate level of NEPA review.**

In any event, Petitioners' interpretation of the Air Tour Management Act is incorrect. Petitioners contend that the Act requires the agencies to prepare an environmental assessment or environmental impact statement for every air tour management plan and does not permit the agencies to use a documented categorical exclusion to comply with NEPA. *See* Third Motion 10-14. But the plain text of the Act does not support Petitioners' position:

> Environmental determination.  In establishing an air tour management plan under this section, the Administrator and the Director shall each sign the *environmental decision document* required by section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. 4332) which *may* include a finding of no significant impact, an environmental assessment, or an environmental impact statement and the record of decision for the air tour management plan.

49 U.S.C. § 40128(b)(2) (emphasis added); Third Motion 10. Contrary to Petitioners' contention, this provision does not prohibit the agencies from using a documented categorical exclusion to comply with NEPA. Section 40128(b)(2) requires each agency to sign the "environmental decision document," which "*may* include" one of the identified types of documents. 49 U.S.C. § 40128(b)(2). As a general rule, "may" is permissive, not mandatory. *E.g.*, *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016). A permissive reading is the most natural reading of the term here. Here, the agencies signed records of

decision that included an explanation of their reliance on a categorical exclusion—
a lawful choice under the provision's permissive language.

Petitioners invoke the canon of statutory construction for negative
implications known as *expressio unius est exclusio alterius*. Third Motion 10. "The
force of any negative implication, however, depends on context." *NLRB v. SW
Gen., Inc.*, 580 U.S. 288, 302 (2017). And the "*expression unius* canon applies
only when circumstances support[] a sensible inference that the term left out must
have been meant to be excluded." *Id*. (cleaned up). In context, the permissive
words "may include" in Section 40128(b)(2) do not signal the following list is
exclusive. Rather, a list following "may *only* include" would compel such
conclusion. But that is not what Congress wrote. And Section 40128(b)(2) includes
"record of decision" as an independent member of the list, and the agencies have
issued records of decision along with the documented categorical exclusion on
which they relied.

Had Congress intended to eliminate the agencies' discretion to apply a
categorical exclusion to an air tour management plan and to require the agencies to
prepare an environmental assessment or environmental impact statement, it would
have done so by expressly stating that the preparation of one of those two
documents was required. Or Congress could have stated that application of a
categorical exclusion is unavailable. Congress did neither. Rather, Section

16

40128(b)(2) makes clear that both agencies must comply with NEPA and that, even though the FAA is the lead agency for NEPA purposes, both agencies are required to sign the record of decision.

Rather than prescribing the level of NEPA review, Section 40128(b)(2) requires the agencies to agree on the proper environmental review, while preserving their discretion to jointly apply their expert judgment. In some cases, the agencies have exercised this discretion to apply a categorical exclusion, while in others the agencies have decided to prepare an environmental assessment. Both approaches are consistent with the Act.

In short, Petitioners' argument that a documented categorical exclusion is not permissible under the Act is wrong and does not provide a sound basis for "enforcement" of the Mandamus Order, or for issuance of a new mandamus order. *PEER*, 957 F.3d at 273. Petitioners' other objections to the plans and categorical exclusion, Third Motion 12-14, underscore why their claims are not properly heard in this mandamus case. Again, Petitioners are asking the Court to review the *content* of the plans, when the only proper subject of this mandamus case is the *timing* for creating those plans.

## III. Petitioners fail to show they are entitled to the extraordinary injunctive remedy or sanctions.

Not only do Petitioners present incorrect arguments, but they also skip over their burden to meet the four-part test for the injunctive relief that they seek. An

injunction is "an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). To obtain an injunction, a movant must show (1) a likelihood of success on the merits, (2) that it is likely to suffer an irreparable injury in the absence of an injunction, (3) that the balance of equities favors the movant, and (4) that an injunction is in the public interest. *Id*. at 20. Petitioners neither acknowledge the four-part test to show entitlement to an injunction, nor attempt to meet it. The Court should not allow Petitioners to make an end-run around this fundamental requirement.

    1.    Petitioners have not shown a likelihood of success. As in their First and Second Motions to Enforce, Petitioners are misusing a "motion to enforce" to seek an injunction that would alter the status quo and substantially enlarge the relief that they obtained in the Court's Mandamus Order. The Mandamus Petition sought a Court order requiring the agencies to complete management plans for seven parks for which Petitioners submitted declarations to support their standing "within 24 months of the date of the issuance of the writ, unless by that time voluntary agreements, compliant with all statutory and regulatory requirements, have been entered with all commercial air operators over those parks." Mandamus Petition 4-5. The Mandamus Petition did not request the injunctive relief Petitioners seek in this Third Motion.

Although the Court granted mandamus relief, it did not grant the specific relief requested by Petitioners. *PEER*, 957 F.3d at 275-276. Instead, the Court ordered the agencies to produce a schedule within 120 days "for bringing all twenty-three parks into compliance" with the Act. *Id*. at 275. The Court noted that it "fully expect[ed] that the agencies will make every effort to produce a *plan* that will enable them to complete the task within two years, as Congress directed." *Id*. at 276 (emphasis added). But the Court also observed that "[i]f the agencies anticipate that it will take them more than two years, they must offer specific, concrete reasons for why that is so in their proposal." *Id*. Finally, the Court retained jurisdiction to "approve the plan and monitor the agencies' progress." *Id*.

By contrast, Petitioners now seek injunctive relief beyond that granted by the Court in the Mandamus Order—and even beyond that requested in their Mandamus Petition. Third Motion 14-15. Yet Petitioners do not explain why it is proper for them to seek this new relief.

Petitioners ask the Court to order the agencies to ban all but 50 air tours per year over each of 21 parks, 12 of which are covered by final plans. Third Motion 14-15. Yet Petitioners identify no authority for an injunction overriding final agency actions not under review in this case.

For the nine parks that the agencies have not yet brought into compliance with the Act, air tours are being conducted under interim operating authority that

the FAA was required to issue by the Act. 49 U.S.C. § 40128(c)(1). While the Act provides that plans "may prohibit commercial air tour operations over a national park in whole or in part," *id*. § 40128(b)(3)(A), the Court has distinguished between the requirement that the agencies prepare plans and the discretionary nature of their content. *See PEER*, 957 F.3d at 273. The Court noted that "Petitioners do not seek to control the content of the plans." *Id.* Yet that is precisely what Petitioners seek to do in this Third Motion.[3] Because the content of a plan is not something that may be compelled by mandamus, Petitioners' request is overreaching, and the Court should not grant it, especially when 14 parks are now in compliance, and the agencies are on track to bring the remaining nine parks into compliance by the dates in the Compliance Schedule.

2. Petitioners have shown no injury, let alone an irreparable one.

Movants cannot obtain injunctive relief if they "cannot show that they will suffer irreparable injury." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010). To establish irreparable harm, a movant must show an injury "both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). The movant must show that the "injury complained of [is] of such imminence that there is a clear and present need for

---

[3] The authority to "prohibit commercial air tour operations over a national park in whole or in part" appears in the subsection of the Act identifying the "Contents" of "Air Tour Management Plans." *See* 49 U.S.C § 40128(b)(3)(A).

equitable relief to prevent irreparable harm." *Id*. (cleaned up). The movant must further "substantiate the claim that irreparable injury is 'likely' to occur." *Id*.

The motion fails to satisfy this "high standard." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Petitioners make a passing reference to "harm to park natural resource values, visitor experience and tribal lands," Third Motion 15, but they offer no evidence of an imminent irreparable injury. In fact, they articulate no injury at all tied to the agencies taking longer than two years to bring all eligible parks into compliance with the Act. Without a "clear showing" of irreparable harm, Petitioners are not entitled to the extraordinary remedy of an injunction. *Winter*, 555 U.S. at 22.

3.      The balance of the harms and public interest weighs against Petitioners. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance of harms and public interest factors merge when government is opposing party). This Court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (cleaned up). Petitioners' requested injunction would impose punitive and disproportionate economic harm on the third-party air tour operators.

Petitioners request that, for 21 parks, the Court "order that no air tours beyond the 50 tours per year that are exempt from" the Act "may take place until a fully compliant [air tour management plan], based on an environmental assessment

or environmental impact statement is in place." Third Motion 15. An injunction

would harm third parties that are not before the Court. Petitioners show no regard

for the reliance interests or economic consequences of a prohibitory injunction that

would alter the status quo. And they seek this disruptive relief while the Court is

overseeing an orderly process for the agencies to bring the remaining nine parks

into compliance with the Act. In response to Petitioners' Second Motion to

Enforce, the Court only ordered the agencies to propose firm compliance dates and

denied injunctive relief without prejudice. Nothing in this Third Motion provides a

reason to disturb the Court's July 2022 Order. The agencies should be able to rely

on the Court's directives. *Cf. N.Y. Republican State Committee v. SEC*, 799 F.3d

1126, 1136 (D.C. Cir. 2015) ("Agencies, no less than private litigants, have

interests in finality and certainty.").

In summary, Petitioners have failed to meet even one of the four elements

for an injunction, so their request must be denied.

\*     \*     \*

As an alternative to an injunction, Petitioners ask the Court to "hold the

agencies in contempt for failing to comply with its mandamus order, and impose

fines or other sanctions until compliance is achieved." Third Motion 15. Petitioners

fail to explain whether they seek civil or criminal contempt. *See Cobell v. Norton*,

334 F.3d 1128, 1145-47 (D.C. Cir. 2003) (discussing the difference between civil and criminal contempt). In either case, their request is baseless.

A party moving for a finding of civil contempt (the lesser standard) must show by "clear and convincing evidence" a violation of a "clear and unambiguous" order by the Court. *Armstrong v. Executive Off. of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993). Petitioners have not even attempted to meet this burden.

The agencies have complied in good faith with the Court's Orders. And the agencies will continue to do so until they have fully complied with the Mandamus Order by bringing all eligible parks into compliance with the Air Tour Management Act. The agencies' good faith compliance is shown by their filings and declarations responding to Petitioners' three Motions to Enforce over the past year, by the agencies' Joint Supplemental Report, and by the agencies' quarterly Progress Updates. The request for contempt should be denied.

# CONCLUSION

For all these reasons, the Court should deny the Third Motion to Enforce.

Respectfully submitted,

Of Counsel:

/s/ *Justin D. Heminger*
TODD KIM
*Assistant Attorney General*

MARC A. NICHOLS
*Chief Counsel*
SCOTT MITCHELL
*Assistant Chief Counsel*
PATRICIA DEEM
*Attorney*
Office of the Chief Counsel
Federal Aviation Administration

JUSTIN D. HEMINGER
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice

SARAH KRAKOFF
*Deputy Solicitor for Parks and Wildlife*
SARA PORSIA
*Attorney*
Office of the Solicitor
U.S. Department of the Interior

March 27, 2023
DJ 90-13-1-15766

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this filing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) and Circuit Rule 27(c) because it contains 5,186 words, excluding the parts of the filing exempted under Fed. R. App. P. 32(f), according to the count of Microsoft Word.

/s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

Counsel for Federal Aviation
Administration and National Park
Service

## INDEX TO EXHIBITS

Exhibit 1     Declaration of Raymond M. Sauvajot, Ph.D., Associate
              Director for National Resource Stewardship and Science
              for the National Park Service ("Third Sauvajot Decl.")

Exhibit 2     Declaration of Kevin Welsh, Executive Director of the
              Federal Aviation Administration's Office of
              Environment and Energy ("Third Welsh Decl.")

# EXHIBIT 1
## Third Declaration of Raymond Sauvajot

**DECLARATION OF RAYMOND M. SAUVAJOT, PH.D.
IN SUPPORT OF THE RESPONSE BY THE FEDERAL AVIATION
ADMINISTRATION AND THE NATIONAL PARK SERVICE TO
PETITIONERS' THIRD MOTION TO ENFORCE ORDER
GRANTING PETITION FOR MANDAMUS**

I, Raymond M. Sauvajot, Ph.D., declare as follows:

1.  I am the Associate Director for National Resource Stewardship and Science for the National Park Service (Park Service). My declaration in support of the agencies' response to Petitioners' first motion to enforce the Court's order (First Motion to Enforce) dated November 5, 2021, incorporated by reference herein, supplies relevant information regarding my background.

2.  I have personal knowledge of all facts stated in this declaration.

3.  The Park Service and the Federal Aviation Administration have brought 14 parks into compliance with the Air Tour Management Act. The agencies completed air tour management plans for two parks before their July 21, 2022 Joint Supplemental Report was filed: Olympic National Park and Mount Rainier National Park. Since then, the agencies have completed eight more plans *before* the proposed firm compliance dates in their July 21, 2022 Joint Supplemental Report for the following 11 National Park System units: Death Valley National Park, Glacier National Park, Great Smoky Mountains National Park, Canyonlands National Park, Arches National Park, Bryce

Canyon National Park, Natural Bridges National Monument, Golden Gate

National Recreation Area, Point Reyes National Seashore, Muir Woods

National Monument and San Francisco Maritime National Historical Park.[1]

The agencies also completed voluntary agreements with all operators for the

National Parks of the New York Harbor (Statute of Liberty National

Monument and Governors Island National Monument) before the proposed

firm compliance date in their July 21, 2022 Joint Supplemental Report.

4. The agencies are making sufficient progress so that they are on still track to

meet the proposed firm compliance dates in their July 21, 2022 Joint

Supplemental Report for all remaining parks.

I declare under penalty of perjury that the foregoing is true and correct. Executed

on March 27, 2023 in Washington, D.C.

RAYMOND
SAUVAJOT

Digitally signed by
RAYMOND SAUVAJOT
Date: 2023.03.27 10:01:47
-04'00'

Raymond M. Sauvajot, Ph.D.

---

[1] The agencies prepared single air tour management plan for the four San Francisco Bay Area parks. Muir Woods National Monument was not one of the 23 parks included in the Court-approved Plan because it was exempt, but the Park Service later withdrew the exemption.

# EXHIBIT 2
Third Declaration of Kevin Welsh

**DECLARATION OF KEVIN WELSH
IN SUPPORT OF THE RESPONSE BY THE FEDERAL AVIATION
ADMINISTRATION AND THE NATIONAL PARK SERVICE TO
PETITIONERS' THIRD MOTION TO ENFORCE ORDER
GRANTING PETITION FOR MANDAMUS**

I, Kevin W. Welsh, declare as follows:

1. I am the Executive Director, Environment & Energy at the Federal Aviation Administration. My declaration in support of the agencies' response to Petitioners' first motion to enforce the Court's order (First Motion to Enforce) dated November 5, 2021, incorporated by reference herein, supplies relevant information regarding my background.

2. I have personal knowledge of all facts stated in this declaration.

3. The Park Service and the Federal Aviation Administration have brought 14 parks into compliance with the Air Tour Management Act.  The agencies completed two air tour management plans before their July 21, 2022 Joint Supplemental Report: Olympic National Park and Mount Rainier National Park. Since then, the agencies have completed eight more plans *before* the proposed firm compliance dates in their July 21, 2022 Joint Supplemental Report for the following National Park System units:  Death Valley National Park, Glacier National Park, Great Smoky Mountains National Park, Canyonlands National Park, Arches National Park, Bryce Canyon National

Park, Golden Gate National Recreation Area, Point Reyes National Seashore, and San Francisco Maritime National Historical Park.[1] The agencies also completed voluntary agreements for the National Parks of the New York Harbor (Statute of Liberty National Monument and Governors Island National Monument) with all operators before the proposed firm compliance date in their July 21, 2022 Joint Supplemental Report.

4.  The agencies are making sufficient progress so that they are on still track to meet the proposed firm compliance dates in their July 21, 2022 Joint Supplemental Report for all remaining parks.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 25, 2023 in Washington, D.C.

KEVIN W. WELSH
Digitally signed by KEVIN W. WELSH
Date: 2023.03.25 17:21:19 -04'00'

Kevin W. Welsh

---

[1] The agencies prepared single air tour management plan for Golden Gate National Recreation Area, Point Reyes National Seashore, Muir Woods National Monument, and San Francisco Maritime National Historical Park. Muir Woods National Monument was not one of the 23 parks included in the Court-approved Compliance Plan and was exempt because no tours had been conducted over it for several years. But the Park Service withdrew its exemption, and the agencies included it in the combined air tour management plan for the San Francisco Bay Area parks.